Richmond

PFIZER, INC.

V.

LOTTIE M. JONES

November 26, 1980.

Record No. 781749.

Present: All the Justices.

*Rosewell Page, III (Evan A. Burkholder; McGuire, Woods & Battle,* on briefs), for appellant.

*Russell H. Roberts (Thomas E. Crosley, Jr.; Robert M. Haley; Roberts, Crosley, Haley & Ashby*, on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

Pfizer, Inc. appeals from a $225,000 verdict and a $100,000 final judgment entered upon remittitur whereby it was found negligent in not adequately warning Lottie Jones's attending physician of the possible aftereffects of an injection of Vistaril IM prescribed for her.

On August 16, 1975, Lottie Jones was hospitalized in Fredericksburg by her physician, Dr. Richard H. Thompson, for treatment of cholecystitis (inflammation of the gallbladder). For the abdominal pain, fever and other symptoms she was experiencing, Dr. Thompson prescribed bed rest, intravenous fluids to maintain her hydration, antibiotics, and a series of four injections between August 17 and 21, combining Demerol and Vistaril IM.*

The first two and the fourth injections of the combination of Demerol and Vistaril IM were given without incident. However, immediately following the third injection into the right buttock, given on August 18 by the nurse on duty, Mrs. Jones complained of "very bad pain" in her hip. Ice packs were prescribed immediately. Dr. Thompson's initial examination of the hip the next morning revealed a reddish discoloration and hardening under the skin with blisters forming in a small area. Over a period of a week, the inflammation had spread to a very large area with raised blisters, a dark discoloration, and insensitivity to touch, which indicated to Dr. Thompson that necrosis, or death, of the tissue had occurred. Four debridements (operations to remove dead tissue) were performed on Mrs. Jones on September 4, 10, 16, and 23, and the wound was irrigated, washed out, and packed with gauze four times each day by the nursing staff. On October 9, skin was removed from Mrs. Jones's thigh, and a skin graft was performed on her hip. When released from the hospital on October 22, 1975, she had a large concave hole in her right hip. The fact that the subcutaneous in-

---

* According to the testimony of Dr. Patricia Ann Walmsley, a pathologist and Senior Associate Medical Director of Pfizer, Inc., Vistaril (hydroxyzine hydrochloride) Intramuscular Solution is primarily used before and after operations in association with narcotics in the treatment of pain and anxiety. She also testified that Pfizer recommends a combination of Demerol and Vistaril because Vistaril potentiates the effect of Demerol, a pain reliever, and "you get a greater degree of pain relieve [sic] than if you just used the narcotic. You can reduce the amount of the narcotic that you give, and still get the pain relieve [sic]. It reduces the side effect you get from a narcotic, such as nausea."

jection of Vistaril IM caused the necrosis of the tissue was confirmed during the trial by expert medical testimony for both Mrs. Jones and Pfizer, Inc., the manufacturer of the drug Vistaril IM.

The insert accompanying the package of Vistaril IM contained these express directions: "Vistaril Hydroxyzine Hydrochloride Intramuscular Solution for Intramuscular Use Only"; "Hydroxyzine Hydrochloride intramuscular solution is intended only for intramuscular administration and *should not, under any circumstances, be injected subcutaneously,* intra-arterially or intravenously." (emphasis supplied); and "As with all intramuscular preparations, VISTARIL Intramuscular Solution should be injected well within the body of a relatively large muscle."

The main issue at trial was the sufficiency of the warnings contained in the package insert. Dr. Thompson and Dr. Peter R. Smith, testifying for Mrs. Jones, both admitted that they were familiar with the insert and knew that under no circumstances was Vistaril IM to be injected into the subcutaneous tissue, but asserted that the warning was inadequate because it did not warn of the potential risk of Vistaril IM coming into contact with subcutaneous tissue. Dr. Smith also testified that a special warning should appear on the insert to ensure that extra care be taken in the injection of obese patients. But Dr. Smith also acknowledged that "in working in a hospital ward . . . you cannot warn about every drug and every possible complication."

In pretrial deposition excerpts admitted into evidence, Elizabeth Pronovost, the nurse who administered the controversial injection of Vistaril IM, stated that Mrs. Jones was a "very large woman" which would make injection deep within the muscle more difficult to accomplish, and that she had marked the target area of the hip before making the injection. She also stated that she was aware that Vistaril IM was an intramuscular solution and that she had given "many, many injections of it."

Dr. Walmsley testified that the injection had not been made deep enough, and that if the injection had entered the muscle, the reaction Mrs. Jones experienced would not have occurred.

Mrs. Jones's theory was that, although Pfizer gave explicit instructions as to how the drug should be administered, it negligently failed to warn that necrosis might result if the drug were improperly injected into an obese person. This theory was presented to the jury and resulted in a verdict for Mrs. Jones.

Pfizer advances five assignments of error but in this opinion we

are only concerned with the issue of sufficiency of the evidence of negligence, since that is dispositive of the case.

█ We start with elementary principles of law. In 2 R. Hursh & H. Bailey, *American Law of Products Liability* § 8:11, 173 (2d ed. 1974), it is stated that ". . . in the case of prescription drugs, it is the general rule that the duty of the drug manufacturer is to warn the physician who prescribes the drug in question. . . ."

█ A similar problem was before this court in *Sadler* v. *Lynch*, 192 Va. 344, 64 S.E.2d 664 (1951), a wrongful death action. In that case plaintiff admitted that decedent had been warned of the danger, but contended that the warning was insufficient because the decedent was not told exactly how the danger would operate. This court overruled this contention in these words: "[W]e do not think that . . . the duty of the defendant extended to explaining exactly how the danger against which he had been warned might operate." 192 Va. at 349, 64 S.E.2d at 667. This is analogous to the present case. The physician was told under no circumstances to inject the drug into subcutaneous tissue, although he was not told that necrosis might result from his violation of this instruction.

*Nolan* v. *Dillon*, 261 Md. 516, 276 A.2d 36 (1971) is a case similar to this one. There the plaintiff sued her obstetrician for negligence because of an intravenous injection of Sparine. The physician filed a third party complaint against the drug manufacturer claiming that the warning was inadequate. The warning provided:

> It is important to make sure that intramuscular injections are given deeply into large muscle masses, i.e., gluteal region, and intravenous injections are given in diluted solutions . . . into the lumen of the vein. Under no circumstances should intra-arterial injections be given.

261 Md. at 516, 276 A.2d at 39. The court held the warning adequate and said further: "The duty is to give a reasonable warning, not the best possible one. . . ." 261 Md. at 523, 276 A.2d at 40. *Cf. Magee* v. *Wyeth Laboratories, Inc.*, 214 Cal. App. 2d 340, 29 Cal. Rptr. 322 (1963). *See Featherall* v. *Firestone*, 219 Va. 949, 962, 252 S.E.2d 358, 367 (1979); Annot., 94 A.L.R.3rd 748 (1979).

We therefore hold that Pfizer was free of actionable negligence; that the verdict and final judgment for Lottie Jones should be set aside; and that final judgment be here entered for Pfizer.

*Reversed and final judgment.*