**Tracy Isabel ABBOT, a minor who sues by her mother and next friend Deborah ABBOT, Plaintiff–Appellant,**

**v.**

**AMERICAN CYANAMID CO., a Maine Corp., Defendant–Appellee,**

**Pharmaceutical Manufacturers Association; American Academy of Family Physicians; United States of America, Amici Curiae.**

**No. 87–1578.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 4, 1988.

Decided April 20, 1988.

---

Michael Hersch Gottesman (Barbara E. Bergman, David A. Sklansky, Cynthia L. Estlund, Deborah C. Malamud, Bredhoff & Kaiser, Washington, D.C., Anthony M. Colantoni, Martin Preiser; McDowell & Colantoni, Ltd., Chicago, Ill., Robert J. Zelnick; Szabo, McCarthy, Quito, Webb & Zelnick, Woodbridge, Va., on brief), for plaintiff-appellant.

Lloyd Norton Cutler (James Robertson, Ronald J. Greene, Michael Stevenson, Robert C. Longstreth, Wilmer, Cutler & Pickering, Edwin A. Williams, Kellogg, Williams & Lyons, Washington, D.C., on brief), for defendant-appellee.

Ronald E. Robertson, Gen. Counsel, Dept. of Health & Human Services, Catherine C. Lorraine, Associate Chief Counsel, Washington, D.C., for Enforcement, Food & Drug Admin.

Richard K. Willard, Asst. Atty. Gen. (John F. Cordes, Irene M. Solet, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., on brief), for amicus curiae U.S.

Richard F. Kingham, Bruce N. Kuhlik, Covington & Burling (Bruce J. Brennan, Edwin C. Mulcahy, Washington, D.C., Pharmaceutical Mfrs. Ass'n, on brief), for amicus curiae Pharmaceutical Mfrs. Ass'n in support of defendant-appellee.

Gerald W. Gorman, John A. Vering, III (Dietrich, Davis, Dicus, Rowlands, Schmitt & Gorman, Kansas City, Mo., on brief), for amicus curiae American Academy of Family Physicians in support of defendant-appellee.

Before MURNAGHAN, SPROUSE, and WILKINS, Circuit Judges.

MURNAGHAN, Circuit Judge:

Plaintiff, Tracy Abbot, whose name throughout is sometimes inconsistently spelled as "Abbott", is a four year old child suffering neurologic injuries. She alleges that they result from inoculation in August 1983 of Tri–Immunol, a diptheria-tetanus-pertussis (DTP) vaccine manufactured by Lederle Laboratories, a division of defendant American Cyanamid Co. Plaintiff brought suit under three counts: (1) strict liability, (2) breach of implied warranty of merchantability and (3) negligence. In the course of the summary judgment proceedings, plaintiff limited her claims to: (1) breach of warranty in two manners (a) failure to warn and (b) defective design, and (2) the tort of negligent design.

The district court granted summary judgment on all claims to defendant. First, it held that plaintiff's rights under state law were preempted by federal law. Second, the court granted judgment, on an alternate basis, to defendant on plaintiff's failure to warn claim because plaintiff's administering physician, who was a "learned intermediary," testified on deposition that the warnings were adequate.

1. *Whether federal law preempts imposition of state common law liability for defective design or failure to warn upon a manufacturer of a vaccine.*

██ The doctrine of federal preemption of state law arises under the supremacy clause of the United States Constitution, art. VI, cl. 2. Preemption occurs in any of three manners: (1) Congress may pass a statute that by its express terms preempts state law, (2) Congress, though not expressly so stating, may imply that it is preempting state law by occupation of an entire field of regulation, so that no room is left for supplementary state regulation, (3) Congress may speak neither expressly nor impliedly of preemption, nonetheless state law is preempted to the extent it actually conflicts with federal law; such a conflict occurs when (a) compliance with both state and federal law is impossible or (b) when state law stands as an impediment to a federal purpose. *Michigan Canners and Freezers Assoc. v. Agricultural Mktg. and Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2522–23, 81 L.Ed.2d 399 (1984).

Defendant discerns preemption of plaintiff's claims from the Public Health Service Act, 42 U.S.C. §§ 201–300 (PHSA) and the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392 (FDCA) of which the enactments both predate the regrettable 1983 incident. Defendant argues for preemption most strongly under manner 3(b), frustration of a federal purpose, its so-called narrow preemption argument, though it alternatively argues that manner 2 is satisfied also, its broad preemption argument. Defendant makes no argument that Congress, in the period relevant to the present case, has expressly displaced state law regarding vaccines. Plaintiff argues the contrary, that Congress has expressly provided the opposite, *i.e.*, that state remedies apply. Plaintiff discerns the argument from the National Childhood Vaccine Injury Act of 1986, Pub. L. 99–660, 100 Stat. 3755 (1986), (1986 Act) and its legislative history.

In the 1986 Act, Congress created an administrative "no-fault" program to compensate children injured by vaccines. The 1986 Act directed that children would have access to state remedies but with certain restrictions for injuries resultant from vaccinations administered after the 1986 Act's effective date. The effective date of the pertinent provisions of the 1986 Act is the date of enactment of a special tax to finance the compensation program. The 1986 Act did not provide a funding tax, but part of the Omnibus Budget Reconciliation Act of 1987 (Budget Act) did. A manufacturers' excise tax was placed on certain vaccines to fund the Vaccine Injury Compensation Trust Fund. The Budget Act also contains the Vaccine Compensation Amendments of 1987 (1987 Act) that establish October 1, 1988 as the effective date for the compensation system and limitation upon state law for vaccinations occurring after that date.

Plaintiff's argument is anachronistic, for it uses subsequent legislation in construing the preemptive effect of the earlier, PHSA and FDCA, statutes. While anachronistic, the approach is not without support; the Supreme Court has on occasion found evidence of Congress' intent concerning a statute at the time of its enactment embodied in subsequent actions regarding the statute. *Grove City College v. Bell*, 465 U.S. 555, 567, 104 S.Ct. 1211, 1218, 79 L.Ed.2d 516 (1984). Since the 1986 Act is an amendment to the PHSA the exception might apply. We need not decide what effect the 1986 Act has, as plaintiff claims, for determining the preemptive intent of the PHSA and FDCA, for even without consideration of what we should draw from the allowance of state based actions in the 1986 Act, we conclude that, considering the PHSA and FDCA alone, Congress did not intend, either expressly or impliedly, to preempt state law.

Defendant's broad preemption theory is that pervasive federal regulation of vaccines reflects a federal purpose to occupy the field of vaccine design and labeling. Defendant's narrow theory is that the national public health purposes and objectives underlying the PHSA would be frustrated if potentially ruinous liability could be imposed under state law for manufacturing

the only type of pertussis (whooping cough) vaccine approved by the federal government rather than a different type of vaccine that is not now and might never be federally approved. Defendant argues that preemption under its narrow theory is most clear as against design defect and failure to warn claims, as plaintiff alleges in the present case, in contrast to claims of improper manufacture, distribution or testing. We first consider the broad theory, then the narrow.

■ The FDA's regulation of prescription drugs and biological products is comprehensive. The DPT vaccine is a prescription biological product subject to the provisions of the FDCA, the PHSA, and regulations promulgated thereunder. The FDA regulations encompass the licensing, production, testing, distribution, labeling, review and approval of all drugs and biologicals. Each DPT manufacturer must be licensed, must submit detailed description of and receive FDA approval of its manufacturing process, must permit FDA inspection of its manufacturing facilities, meet personnel qualifications, and conduct and submit results of quality assurance tests to the FDA for each batch of vaccine. 21 C.F.R. §§ 600.20, 601.1, 601.2, 601.25, 610.1, 620.1–620.7.

The FDA requires that the label or package insert for a biological product contain among others: (1) the composition of the product; (2) the product's administration schedule; (3) indication and contraindication of product usage; and (4) potential adverse reactions associated with the product's use. 21 C.F.R. §§ 201.50–.57, 610.-60–.65. The language of the label is subject to FDA approval, and once approved, cannot be changed without FDA approval. 21 C.F.R. § 601.12.

■ Preemption does not follow immediately from the comprehensive federal regulation of prescription biological products. Every subject that merits congressional legislation is, by definition, a subject of national concern. That cannot mean, however, that every federal statute ousts all related state law. *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 719, 105 S.Ct. 2371, 2378, 85 L.Ed.2d 714 (1985). Defendant has several canons of interpretation and presumptions set against it. When Congress does not expressly state its intent, there is a presumption against preemption. *Maryland v. Louisiana*, 451 U.S. 725, 726, 101 S.Ct. 2114, 2118–19, 68 L.Ed.2d 576 (1981). The presumption is even stronger with state or local regulation of matters related to health and safety. *Hillsborough*, 473 U.S. at 715, 105 S.Ct. at 2376. Courts are more reluctant to infer preemption from the comprehensiveness of regulations than from the comprehensiveness of statutes. *Id.* at 717, 105 S.Ct. at 2377. When preemption by regulation is considered, courts are reluctant to find preemption by federal regulations when the agency does not make very clear an intent of preemption since agencies normally address problems in a detailed manner. *Id.* at 718, 105 S.Ct. at 2377–78. The presumption against preemption is even stronger against preemption of state remedies, like tort recoveries, when no federal remedy exists. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251, 104 S.Ct. 615, 622–23, 78 L.Ed.2d 443 (1984). All of those work against preemption in the present case. We agree with the majority of courts addressing the issue that Congress has not impliedly preempted state regulation of vaccine manufacture.[1]

1. The overwhelming majority of courts considering federal preemption of state law as regards vaccines have found no preemption. *Foyle v. Lederle Laboratories*, 674 F.Supp. 530 (E.D.N.C. 1987), *petition for permission to pursue interlocutory appeal filed in this Court* Dec. 3, 1987 (No. 87–8119); *Percival v. American Cyanamid Co.*, No. CIV–85–2671–P (W.D.Ok. Nov. 25, 1987) [available on WESTLAW, 1987 WL 46954]; *Scholl v. Lederle Laboratories*, 684 F.Supp. 246 (D.Ariz.1987); *Morris v. Parke, Davis & Co.*, 667 F.Supp. 1332 (C.D.Cal.1987); *MacGillivray v. Lederle Laboratories*, 667 F.Supp. 743 (D.N.M.1987); *Graham v. Wyeth Laboratories*, 666 F.Supp. 1483 (D.Kan.1987); *Wack v. Lederle Laboratories*, 666 F.Supp. 123 (N.D.Ohio 1987); *Patten v. Lederle Laboratories*, 665 F.Supp. 745 (D.Utah 1987). Only the court in *Hurley v. Lederle Laboratories*, 651 F.Supp. 993 (E.D.Tex.1986) and the district court in the present case have found federal preemption.

Defendant's narrow preemption argument, that the national public health purposes would be frustrated by potentially ruinous state law tort liability, is also incorrect. A decision about preemption on that ground requires the court independently to consider national interests and their putative conflict with state interests. While preemption under a theory of express or implied preemption is essentially a matter of statutory construction, preemption under a frustration of federal purpose theory is more an exercise of policy choices by a court than strict statutory construction. An independent judgment that federal purposes require preemption comes in the face of congressional silence, both express and implied, on the subject.

The overall goal of the PHSA and FDCA is the safety of drugs and biologic products. That goal is more enhanced than frustrated by state law. However, the federal government has favored not only vaccine safety but also availability and use. Availability and use of vaccines can be frustrated by state tort law. The issue then is whether the federal interest requires that federal regulation be viewed as having struck the balance between safety and quantity or whether the regulations merely establish minimum safety standards and allow state regulation to establish the balance. *See Hillsborough,* 471 U.S. at 721, 105 S.Ct. at 2379 (The Court responded to a similar preemption argument and decided that federal regulation of blood plasma collection did not strike the balance of safety and quantity, but only provided minimum standards).

In deciding the issue of whether federal law should strike the balance or allow states to, it is appropriate to consider the National Childhood Vaccine Injury Act of 1986. As indicated earlier, we assume the 1986 Act is of no relevance in construing the preemptive intent of earlier federal legislation like the PHSA and FDCA. That conclusion is important when considering whether Congress expressly or impliedly preempted state law in those statutes.

We must decide whether the federal interest in vaccine safety and quantity is frustrated by coexisting state regulation. Thus, it is appropriate to look at recent views on federal policies regarding the balance of vaccine availability and safety especially those enunciated by the Congress. The Childhood Vaccine Injury Act of 1986 speaks to this balance with clarity. Congress created a "no-fault" compensation program as an alternate to state tort and contract recoveries. The legislative history of the Vaccine Compensation Amendments of 1987 make even more clear that at the time of passage of the 1986 and 1987 Acts Congress acted with the understanding that state tort and contract remedies were available and that they continue to be available as modified by the Acts.

Congress, when it addressed vaccines in 1986 and 1987, did not preempt state law. Further, to the extent that the Acts state congressional views about the preemptive effect of earlier legislation, the Acts and their legislative history assume that earlier legislation was of no preemptive effect. Defendant argues that the 1986 Act did not reject preemption, rather it is neutral on the issue leaving the preemption issue exactly as it stood before the 1986 Act. Defendant supports the argument in the only way it can, by noting that the word "preemption" cannot be found in any of the 1986 Act legislative materials, therefore, it was not addressed. While the premise is true, the conclusion is not. The 1986 Act is replete with two powerful assumptions: one, state tort and contract actions are available without preemption by earlier federal legislation and two, following the 1986 Act's effect state law actions remain available. The 1987 Act expressly states these assumptions. Defendant's assertion that the statement, made in the purpose and summary section of the House Report on the 1986 Act, "[v]accine-injured persons ... [who] reject a judgment and award made under the compensation program ... may file a civil action for damages relating to a vaccine injury just as he or she may have done prior to the enactment of the legislation," is neutral on the issue of preemption strains a normal reading. H.R.Rep. No. 908, 99th Cong., 2d Sess. 4, *reprinted in*

1986 U.S. Code Cong. & Admin. News 6287, 6344–45.

▇▇▇ Since Congress did not believe, in 1986 or 1987, that federal public health policies require preemption of state tort and contract law regarding vaccines it is dubious that the court should contemporaneously make the opposite policy determination. The point of time that is relevant in deciding whether a federal policy requires preemption, as opposed to point of time when the intent of a statute to preempt is discerned, is the time of the suit. *See Hillsborough,* 471 U.S. at 720–722, 722 n. 5, 105 S.Ct. at 2380 n. 5 (the Court considers contemporaneous policy interests).

2. *Whether Virginia law and its "learned intermediary" doctrine preclude recovery from a vaccine manufacturer*

Under Virginia law, recoveries for personal injuries caused by defective products can be made as breach of an implied warranty of merchantability or under a tort theory of negligent design. The warranty cause of action bears considerable similarity to the doctrine of strict liability in tort explained in Restatement (Second) of Torts § 402A, though Virginia has not adopted § 402A. *Lust v. Clark Equip. Co.,* 792 F.2d 436, 438–39 (4th Cir.1986). The warranty cause of action has two elements: (1) the goods were "unreasonably dangerous" either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) the unreasonably dangerous condition existed when the goods left the manufacturer's control. *Bly v. Otis Elevator Co.,* 713 F.2d 1040, 1043 (4th Cir.1983) (quoting *Logan v. Montgomery Ward & Co.,* 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975)). A product is "unreasonably dangerous" if defective (1) in assembly or manufacture, (2) if imprudently designed, or (3) if not accompanied by adequate warnings about its hazardous properties. *Id.; Lust* 792 F.2d at 438.

Plaintiff claims that defendant's product is "unreasonably dangerous" thereby breaching the warranty of merchantability in two manners, one, by defective design, two, by inadequate warning. There is yet another claim, pleaded by plaintiff, and allowed under Virginia law, in tort for negligent design.

The two warranty theories muddle to some extent because plaintiff alleges that one aspect of the inadequacy of defendant's warning was its failure to disclose the defective design of the product. That allegation makes every defective design case a failure to warn case. But plaintiff does allege other defects of the warning, adequate to state a cause of action.

▇▇▇ Defendant muddles the two theories in the other direction. It argues that an adequate warning precludes imposition of liability for a defective product on any theory. Thus, it argues that its adequate warning precludes the defective design claim based on warranty. Defendant has a threshold problem in making the argument here because defendant did not make it below. Defendant's warning arguments below dealt only with whether the warning was adequate as a matter of law to foreclose the failure to warn claim. Plaintiff argues that we, therefore, should not consider the argument. The question is close. The precise argument was not presented below but it is not a substantial shift in theory. Plaintiff's claim for breach of warranty alleges two manners in which the product was unreasonably dangerous. An argument that refutation of one theory of warranty recovery ⁓forecloses the other when the two are so closely related does not run afoul of fairness or the "sifting of issues" considerations embodied in the rule not to pass upon contentions not asserted in the district court.

▇▇▇ When defendant's argument is considered, it fails. The cases it cites are not directly on point. The argument is based on a dictum in *Brockett v. Harrell Bros., Inc.,* 206 Va. 457, 143 S.E.2d 897 (1965). *Brockett* was an adulterated food case in which the court indicated that while contributory negligence does not apply to claims for breach of the implied warranty

of wholesomeness of food, plaintiff cannot recover for defects known, visible or obvious to her. *Id.* at 463, 143 S.E.2d at 902. Defendant's argument extends this dictum to mean that plaintiff cannot recover in warranty for hazards that were adequately warned of. Virginia courts have not carried this dictum as to ordinary consumer products, like food, to all products.

The Supreme Court of Virginia in *Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949, 252 S.E.2d 358 (1975), considered many products liability issues including claims for breach of implied warranty of merchantability by inadequate warning, breach of implied warranty of merchantability by improper design and tort negligent design of a tank lid. The court found that plaintiff could not recover on any of these three theories from the manufacturer of the tank lid. The court considered each claim independently, it did not, after concluding that no duty to warn arose, foreclose the warranty or tort negligence defect claims.

We have decided that federal law does not preempt plaintiff's state law causes of action and that under Virginia law, an adequate warning does not foreclose a design defect claim in either warranty or tort.

We now consider each of the state law tort claims: (a) failure to warn, a manner under which the product would be "unreasonably dangerous" and breach the implied warranty of merchantability, (b) defective design, a second manner in which the product would be unreasonably dangerous, and (c) negligent design, a tort action.

### a. *Failure to warn*

A product can be unreasonably dangerous if not accompanied by adequate warnings about its hazardous properties. With prescription drugs, the duty is not the normal duty to warn the ultimate consumer. Rather, the duty is to warn the physician administering the drug. *Stanback v. Parke, Davis and Co.*, 657 F.2d 642, 644 (4th Cir.1981) (applying Virginia law); *Pfizer, Inc. v. Jones*, 221 Va. 681, 684, 272 S.E.2d 43, 44 (1980). The trial court ruled that the warning given by defendant to plaintiff's physician was adequate as a matter of law, and formed a basis in addition to federal preemption to reject the failure to warn claim.

The adequacy of a warning is a question of fact for the jury. *Pfizer*, 221 Va. at 683–84, 272 S.E.2d at 44–45. The issue is whether the warning was reasonable. *Id.* Defendant and the trial court make much of the fact that plaintiff's physician, Dr. Metzger, testified on deposition that the warning was "very adequate." Defendant argues, and the trial court held, that adequacy was thereby conclusively established.

 We disagree on two grounds. First, Virginia law does not support the notion that the treating physician's subjective view as to adequacy conclusively determines that issue. In *Pfizer*, the Supreme Court of Virginia found a warning adequate as a matter of law in spite of the treating physician's testimony of inadequacy. Second, plaintiff alleges that the warning should have contained a statement about a difference, known to defendant at the time, in adverse reaction rates between different pertussis vaccines. Dr. Metzger testified that had he known that information he would have used the vaccine with the lowest reaction rate. Thus, the adequacy of the warning even in Dr. Metzger's view is in issue.

There is then a genuine issue regarding the adequacy of the warning. Summary judgment on the failure to warn claim was improper.

### b. *Design Defect* and

### c. *Negligent Design*

A product can be unreasonably dangerous if imprudently designed and such a finding will support a claim for breach of the implied warranty of merchantability. In addition, and separate from the warranty claim, is a tort claim for negligent design. *Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949, 961–65, 252 S.E.2d 358, 366–68 (1979). In the former the focus is on the product and its attrib-

utes, in the latter the focus is on the defendant's conduct.

The merits of the design defect claims were not addressed below, the trial court dismissed any design defect claim as preempted. Since we reverse the preemption ruling, the design defect claims move back into the case.

REVERSED.

WILKINS, Circuit Judge, concurring:

I agree with the majority, but for different reasons, that Congress did not intend to completely preempt state tort actions for DTP vaccine-related injuries. The majority reaches this conclusion without deciding what congressional intent is reflected in the National Childhood Vaccine Injury Act of 1986, 42 U.S.C.A. §§ 300aa–1, *et seq.* (West Supp.1987). Prior to the passage of this Act, federal law appeared to preempt any state action alleging defective design of the DTP vaccine. But, this Act unmistakably demonstrates that Congress intended to preempt state law in only limited areas of this field. *See Grove City College v. Bell,* 465 U.S. 555, 567, 104 S.Ct. 1211, 1218, 79 L.Ed.2d 516 (1984) (evidence of congressional intent may be gleaned from subsequent actions).

In deciding whether federal law preempts state law, "our sole task is to ascertain the intent of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, ——, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623 (1987). In the absence of express congressional intent, preemption may be inferred to the extent that "the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Although preemption should not be lightly presumed, *id.,* the legislative history of the Act presents some compelling reasons in support of a finding of preemption. H.R.Rep. No. 908, 99th Cong., 2d Sess. 1–7, *reprinted in* 1986 U.S.Code Cong. & Admin.News 6287, 6344–48 (Legislative History).

For many years, one of this nation's main public health priorities has been the prevention of childhood diseases by immunization. Through federal leadership and state immunization laws, most children are vaccinated against the major childhood diseases prior to entering school. As a result, polio, diphtheria, and tetanus have been virtually eliminated in this country. While the immunization programs have been widely successful in preventing the deaths of thousands of children each year, a small but significant number of children have been injured from unavoidable side effects of some vaccines.

There is no "perfect" vaccine currently available on the market. Some vaccines have potentially fatal side effects, especially the pertussis component of the DTP vaccine. Notwithstanding the potential hazards, the medical community and parent groups have taken the position that the risk of contracting the diseases is greater than the possible side effects of immunization. The federal government continues to support immunization programs and in the majority of states, vaccination is still mandatory for school admission.

Injured children have sought compensation in the courts with increasing frequency. This has resulted in an increase in the price of vaccines, and a decrease in the level of immunization of certain diseases with a corresponding increase in the incidence of those diseases. As a further consequence of the increase in litigation, particularly regarding the DTP vaccine, manufacturers are reconsidering their future role in the vaccine market. Very few companies now manufacture childhood vaccines. American Cyanamid is one of the only two which manufactures the DTP vaccine. The withdrawal of any manufacturer from the market poses a serious threat to public health, in the form of vaccine shortages with resulting decreased immunization and a possible resurgence of these diseases.

Under these circumstances alone, preemption would be warranted because state tort actions for design and warning defects stand as an obstacle to a major federal

purpose. However, read as a whole, the legislative history and the Act demonstrate that congressional intent was not to resolve these problems by complete preemption of state tort actions. Rather, Congress established a no-fault compensation system which in part preempts state law, but largely complements the state tort systems.

By requiring claimants to exhaust their administrative remedies in a speedy, no-fault system prior to filing court actions, Congress hoped to divert a significant number of potential litigants. Legislative History, *supra* at 6354. Children injured from vaccines administered after the effective date of the Act must proceed through the system as a prerequisite to filing a court action. 42 U.S.C.A. § 300aa–11. Those, such as Tracy Abbot, who were injured prior to the effective date are eligible to participate in the new system, but are not required to exhaust its remedies before resorting to the courts. *Id.* While the purpose of the system is to reduce litigation, the Act does not entirely preempt state laws.

The Act generally provides that "State law shall apply to a civil action brought for damages for a vaccine-related injury or death." 42 U.S.C.A. § 300aa–22(a). However, the Act does expressly preempt state law in several respects by: (1) adopting comment k of Section 402A of the Restatement of Torts (Second), precluding liability for damages arising from unavoidable side effects of a properly prepared vaccine accompanied by proper directions and warnings; (2) establishing a rebuttable presumption that warnings are adequate if they comply with federal regulations; and (3) codifying the learned-intermediary doctrine. 42 U.S.C.A. §§ 300aa–22(b), (c). Significantly, the Act also preempts state statutes which prohibit civil actions against manufacturers for vaccine-related injuries. 42 U.S.C.A. § 300aa–22(e); *see also* Legislative History, *supra* at 6368.

Finally, in the Vaccine Compensation Amendments of 1987, which set the effective date of October 1, 1988, Congress clearly expressed its intent:

[A]t the time of original enactment and in passing this legislation, the Committee acted with the understanding that tort remedies were and are available....

....

It is not the Committee's intention to preclude court actions under applicable law. The Committee's intent at the time of considering the Act and in these amendments was and is to leave otherwise applicable law unaffected, except as expressly altered by the Act and Amendments.

H.R.Rep. No. 391, 100th Cong., 1st Sess. 691 (1987), U.S.Code Cong. & Admin.News 1987, pp. 2313–1, 2313–365. Despite our differing analyses, we have reached the same conclusion: Congress did not intend to completely preempt state tort law in the area of vaccine-related injuries.