## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Carol Wright,
Administratrix
of the Estate
of Latonya P. Wright,
deceased

v.

Eli Lilly & Co. et al.

November 15, 2004

Case No. (Law) 03-2891

BY JUDGE MARK S. DAVIS

This matter is before the Court on the Motion for Severance filed by defendants Igor Magier, M.D., and Psychiatric Associates of Chesapeake, P.C., as well as a Motion to Drop Misjoined Party filed by the same defendants. Defendants Churchland Psychiatric Associates, Inc., and E. Daniel Kay, M.D., also filed a Motion to Sever, as did Maryview Medical Center. The factual and procedural background for these motions, discussion of the issues and conclusions are set forth below.[1]

---

[1] Plaintiff Wright was represented at the September 10, 2004, hearing by Philip S. Marstiller, Jr., Esq., of Emroch & Kilduff, L.P. Kay and CPA were represented by Carolyn P. Oast, Esq., of Hancock, Daniel, Johnson & Nagle, P.C. Maryview was represented by Deborah S. Holroyd, Esq., of Goodman, Allen & Filetti, P.L.L.C. Lilly was represented by Brent L. VanNorman, Esq., of Hunton & Williams, L.L.P.

*I. Factual and Procedural Background*

A. *Allegations*

Plaintiff, Carol Wright ("Wright"), Administratrix of the Estate of Latonya P. Wright, filed her Motion for Judgment on November 7, 2003, against Eli Lilly and Company ("Lilly"), Astrazeneca Pharmaceuticals, L.P. ("Astrazeneca"), Psychiatric Associates of Chesapeake ("PAC"), Igor Magier, M.D. ("Magier"), Maryview Medical Center ("Maryview"), Churchland Psychiatric Associates, Inc. ("CPA"), and E. Daniel Kay, M.D. ("Kay"). The first two of the above-listed defendants are pharmaceutical manufacturers and are collectively referred to throughout this Opinion and Order as such, while the latter five are health-care providers and are collectively referred to as such throughout this Opinion and Order.

As the United States District Court for the Eastern District of Virginia noted in remanding this action, the plaintiff "makes claims against the pharmaceutical [d]efendants for negligence from design through inspection, negligence in failing to warn, breach of implied and express warranties, false and fraudulent representations, and failure of the duty to disclose." *Wright v. Eli Lilly et al.*, Civil Action No. 2:03CV888, slip op. at 3 (U.S. Dist. Ct. E.D. Va., March 22, 2004) (hereafter "District Court Opinion"). The plaintiff also makes claims against the health care provider defendants for negligence in providing treatment to plaintiff's decedent, including negligently diagnosing, treating, prescribing, monitoring, and failing to warn. Motion for Judgment, paras. 1-4, 15-16. The motions for decision here involve the health care defendants and their requests to have claims against them severed, or to be dropped as parties, from this suit.

B. *Removal and Remand Decision*

Lilly removed this action to the United States District Court for the Eastern District of Virginia, alleging fraudulent joinder. Plaintiff Wright filed

---

Magier and PAC were represented by Coreen A. Bromfield, Esq., of Rawls & McNelis, P.C. The interests of Astrazeneca were represented by Alan D. Albert, Esq., of LeClair Ryan, P.C. The Court notes that at the time of oral argument on September 10, 2004, there were no responsive pleadings from Astrazeneca in *this* Court's file, though the filing of an Answer is noted in the Opinion and Order remanding the action to this Court. *Wright v. Eli Lilly et al.*, Civil Action No. 2:03CV888 (U.S. Dist. Ct. E.D. Va. March 22, 2004).

a motion to remand to this Court. In an Opinion and Order dated March 22, 2004, the District Court granted Wright's motion and remanded the case to this Court. District Court Opinion, p. 10.

In responding to the pharmaceutical manufacturers' arguments supporting removal, the District Court reviewed Fed. R. Civ. P. 20 governing permissive joinder of parties and providing that "[a]ll persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or *in the alternative*, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." (Emphasis in original District Court Opinion.) The District Court also noted that Fed. R. Civ. P. 21 "governs the misjoinder of parties and provides that, '[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." District Court Opinion, p. 5. The District Court went on to observe that "Virginia law mirrors Federal Rule 20" and states that, " '[a] party asserting . . . a claim . . . may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence.' Va. Code Ann. § 8.01-281(A); Va. Sup. Ct. R. 1:4(k)." District Court Opinion, p. 5.

The health-care providers argued that the removed action should not be remanded to this Court because the plaintiff could not bring the cause of action against the Virginia health-care provider defendants in a Virginia circuit court since the theories of recovery against the two different types of defendants are mutually exclusive. In considering this argument, the District Court examined the allegations of the motion for judgment. District Court Opinion, p. 6. The District Court first noted that the plaintiff alleged in her motion for judgment that the pharmaceutical defendants did not inform the medical providers about the dangers of the drugs and that the medical providers, acting in reliance on the misrepresentations as to the safety of the drugs, prescribed them to decedent. The health-care defendants argued that the allegations against them were made impossible by the allegations against the pharmaceutical defendants, since "it would be impossible for the medical providers to be liable for failure of a duty to warn if it was determined that they could not have known about the dangers because of the pharmaceutical Defendants' concealment of the facts." District Court Opinion, p. 7. The District Court concluded that, "at the pleading stage, the Court need not determine whether Plaintiff could succeed on the merits of the alternative claims." District Court Opinion, pp. 7-8. Furthermore, the District Court

concluded that "this supposed contradiction does not render all of Plaintiff's claims untenable" since plaintiff also alleged negligence against the medical providers in the *monitoring* of decedent as well as in the prescribing of the drugs, such theories not being mutually exclusive "in that the medical providers could have negligently monitored the decedent even if they had no knowledge of the dangers of the drugs." District Court Opinion, p. 8.

Finally, the District Court observed that the alternative allegations were not fatal because "the allegation that the pharmaceutical Defendants hid information does not negate the allegation that physicians knew or should have known of the danger, based on knowledge gained through other sources that the drugs were potentially dangerous." District Court Opinion, p. 8. The District Court held "[t]he Court finds that Plaintiff may bring this suit alleging alternative theories of liability in a Virginia state court; and, therefore, Lilly has not shown fraudulent joinder based on mutually exclusive allegations of fault nor shown that there is no possibility that Plaintiff could establish a cause of action against the in-state Defendants." District Court Opinion, p. 8.[2]

Having found that there was no fraudulent joinder based upon mutually exclusive allegations of fault, the District Court remanded the case to this Court and declined to address motions to dismiss filed by defendants Maryview, CPA, and Kay, pursuant to Fed. R. Civ. P. 21. Those motions to dismiss alleged that the "facts, issues, and allegations underlying Counts 15 and 16 are entirely different from those in Counts 1 through 14 and that,

---

[2] The issue of what effect is to be given to pleadings filed in federal court prior to a remand to state court is a determination for the state court. *Ayres v. Wiswall*, 112 U.S. 187, 190-91, 5 S. Ct. 90, 92, 28 L. Ed. 693, 695 (1884); *see NCS Healthcare of Arkansas, Inc. v. Malone*, 350 Ark. 520, 526-27, 88 S.W.3d 852, 856-57 (2002); *Banks v. Allstate Indemnity Co.*, 143 Ohio App. 3d 97, 99-100, 757 N.E.2d 776, 777-78 (2001). As for orders entered based on such pleadings, while some courts have also held that, "where remand is based on want of jurisdiction on the part of the federal court, any findings or orders made by such court during the time the case was there are void and are not binding upon the state court nor upon the parties," *TracyLoan & Trust Co. v. Mutual Life Ins. Co. of New York*, 79 Utah 33, 39, 7 P.2d 279, 281 (1932), in light of this Court's ruling and the fact that, during oral argument, plaintiff specifically declined to urge any preclusive effect based on the District Court's Opinion and Order, it is not necessary to reach that issue and the Court reaches no conclusion by reciting the holding of the District Court as to whether it or the parties are bound by such findings or conclusions of law. *Cf. Purdue Pharma, L.P. v. Estate of Heffner*, 2004 Miss. LEXIS 1225, *8-9 (Oct. 7, 2004) (concluding that "[a] finding against fraudulent joinder is not the same as a finding for proper joinder").

therefore, they should be dismissed as misjoined parties pursuant to Rule 21." District Court Opinion, p. 10. Accordingly, these issues remained to be raised and decided in this Court after remand.

## C. *Motions and Hearing*

The Motion for Severance and Motion to Sever were argued on September 10, 2004, and the Court requested a supplemental brief from the plaintiff responding to the brief of PAC and Magier that was provided to plaintiff the day before that hearing. The Motion to Drop was noticed for argument on November 10, 2004. However, that matter was not placed on this Court's docket. Nonetheless, plaintiff has responded to the Motion to Drop filed by Magier and PAC, and, since Maryview's pending and unargued Motion to Sever presents no arguments substantively different from those already argued and briefed and because the issues presented are essentially questions of law, the Court has determined that oral argument is not necessary to decide the Motion to Drop filed by Magier and PAC and the Motion to Sever filed by Maryview. *See James v. Arlington County Bd. of Supervisors*, 226 Va. 284, 290, 307 S.E.2d 900, 903 (1983) (no violation of due process where oral argument was denied and views expressed in writing); *see also Commonwealth v. Evans*, 41 Va. Cir. 584 (1994). Therefore, these motions are ripe for decision.

## II. *Discussion*

Before launching into an analysis of the issues, an overview is helpful to understand the context. The Court must decide whether there is misjoinder of parties, analyzing the preconditions to joinder of parties set out in Va. Code § 8.01-281(A) and Va. Sup. Ct. R. 1:4(k). If there is misjoinder of parties, then the Court must grant the motion to drop parties from this action pursuant to Va. Code § 8.01-5(A) and allow the claims against the health-care providers to proceed in a separate action. *Cf. Alvarez v. Armour Pharmaceutical*, 1997 U.S. Dist. LEXIS 13668, *13 (N.D. Ill. 1997).

The Court must also decide whether there is misjoinder of causes of action or claims (as distinguished from parties), analyzing the preconditions to joinder of causes of action or claims set out in Va. Code §§ 8.01-272, 8.01-281(A) and Va. Sup. Ct. R. 1:4(k). If there is misjoinder of causes of action or claims, then the Court must grant the motion to sever such misjoined causes of action or claims pursuant to Va. Code §§ 8.01-272 and 8.01-281(B) and convert them into independent actions. *Cf. Simmons v. Wyeth*

*Laboratories, Inc.*, 1996 U.S. Dist. LEXIS 15950, *9 (E.D. Pa. 1996). The Court notes that even if it were possible for the Court to grant only one of the misjoinder motions (parties *or* actions), the effect is the same as if it had granted both misjoinder motions because the parties that seek to be dropped from this action coincide with the causes of action or claims sought to be dropped.

If the Court determines that there is no misjoinder of parties and no misjoinder of causes of action or claims, it must still decide whether to grant the motions for discretionary severance of any claim(s) or issue(s) pursuant to Va. Code § 8.01-281(B), or whether to do so of its own volition pursuant to Va. Code § 8.01-272.

Because the same preconditions apply to motions to drop based upon misjoinder of parties and to motions for mandatory severance based upon misjoinder of causes of action or claims ("same transaction or occurrence"), the Court will analyze the two issues together after it reviews the statutory authority and standards applicable to consideration of each motion.

## A. *Motion to Drop Based Upon Misjoinder of Parties*

The Court will address the statutory authority for dropping parties, the standard to be applied in deciding whether to drop parties, as well as the case law addressing the motion and the Court's analysis of such motion.

### 1. *Statutory Provisions*

Magier and PAC ask the Court to drop them from this suit on the grounds that they are misjoined parties. Va. Code § 8.01-5(A) provides that:

> No action or suit shall abate or be defeated by the nonjoinder or misjoinder of parties, plaintiff or defendant, but whenever such nonjoinder or misjoinder shall be made to appear by affidavit or otherwise, new parties may be added and *parties misjoined may be dropped by order of the court at any time as the ends of justice may require.*

(Emphasis added.)

Misjoinder historically occurred when someone who may not be a party is included in an action. W. Hamilton Bryson, *Virginia Civil Procedure*, p.

193 (3d ed. 1997); Burks, *Pleading and Practice*, § 72 (4th ed. 1952).[3] At common law, misjoinder of parties was a fatal defect in pleadings, but with the advent of Va. Code § 8.01-5, misjoinder of parties is no longer a fatal flaw since such misjoined parties may be dropped and the action may proceed. Bryson, *supra* p. 194.

### 2. Standard for Consideration

The language of the statute, Va. Code § 8.01-5, provides the standard for deciding motions to drop when it states that the misjoined parties may be dropped "as the ends of justice may require." In *Lee v. Mutual Reserve Fund Life Assoc.*, 97 Va. 160, 162, 33 S.E. 556, 557 (1899), the Court held that "[t]he word *may* in a statute of this kind which is in furtherance of justice means the same as *shall.*" Therefore, if there is misjoinder of parties, absent some other impediment, the Court should drop such misjoined parties from the action.

The Virginia Supreme Court recognized, in *Fox v. Deese*, 234 Va. 412, 423, 362 S.E.2d 699, 705 (1987), that the applicable Virginia statute and rule create the preconditions to joinder by which a motion to drop should be judged. Va. Code § 8.01-281 provides in pertinent part:

A. A party asserting . . . a claim . . . may plead alternative facts and theories of recovery against alternative parties, provided that such claims . . . so joined *arise out of the same transaction or occurrence.* . . .

B. The Court may, upon motion of any party, order a separate trial of any claims. . . .

(Emphasis added.) In addition, Va. Sup. Ct. R. 1:4(k)[4] provides in pertinent part:

---

[3] The term misjoinder is also more recently used to describe the improper joining together of different claims and causes of action. *Fox v. Deese*, 234 Va. 412, 422, 362 S.E.2d 699, 705 (1987); Burks, *supra* § 212.

[4] The Virginia Supreme Court has "the authority to make rules governing the course of appeals and the practice and procedures to be used in the courts of the Commonwealth, but such rules shall not be in conflict with the general law as the same shall, from time to time, be established by the General Assembly." Va. Const., art. 6, § 5. The language in Va. Sup. Ct. R. 1:4(k) regarding joinder mirrors the language contained in Va. Code § 8.01-281. Similar language is contained in Va. Code § 8.01-272, though that section address joinder of claims, rather than pleading

> A party asserting . . . a claim . . . may plead alternative facts and theories of recovery against alternative parties, provided that such claims . . . *arise out of the same transaction or occurrence.* When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims . . . as he has *regardless of consistency* and whether based on legal or equitable grounds.

(Emphasis added.) Therefore, the joinder of claims against different parties is conditioned, by statute and rule, upon their meeting the requirement that they "arise out of the same transaction or occurrence."

Like Fed. R. Civ. P. 21, which permits the dropping of a party "on such terms as are just," this Court concludes that Va. Code § 8.01-5(A) grants broad discretion to the trial court in applying the requirement that the claims against the different parties arise out of the same transaction or occurrence and in deciding whether misjoinder of parties has occurred. *Cf. Health Research Group v. Kennedy,* 82 F.R.D. 21, 29 (D. D.C. 1979) (Rule 21 grants trial court broad discretion to grant leave to drop party and court's decision is guided by, among other things, related considerations of timeliness and prejudice to opposing party).

In discussing the standards for consideration of motions to drop in the federal context, which this Court finds instructive, it has also been observed that while Fed. R. Civ. P. 21 is almost silent on the standard applicable for determining misjoinder, courts have uniformly held that parties are misjoined when they fail to satisfy the preconditions for permissive joinder of parties set forth in Fed. R. Civ. P. 20(a).[5] *Hanna v. Gravett,* 262 F. Supp. 2d 643, 647 (E.D. Va. 2003). *Id.* Indeed, the Virginia Supreme Court recognized in *Fox* that misjoinder occurred if preconditions for permanent joinder were absent.

---

as to alternative parties. Since there is no conflict with the corresponding statutory provision, Va. Sup. Ct. R. 1:4(k) has the force and effect of law.

[5] Fed. R. Civ. P. 20(a) provides, in relevant part, that a plaintiff may join defendants in one action "if there is asserted against them . . . any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

*Fox*, 243 Va. at 422-23, 362 S.E.2d at 705. The preconditions to joinder of "parties"[6] under the federal rule and the Virginia statute and rule are therefore virtually identical, though the Virginia statute and rule omit any reference to "series of transactions or occurrences." *Doe v. Carilion Medical Center*, 65 Va. Cir. 104. 2004 Va. Cir. LEXIS 114, *3, 2004 WL 1470342, *1 (2004). Accordingly, the District Court properly observed, when considering joinder of *parties*, that "Virginia law mirrors Federal Rule 20. . . ." *Wright v. Eli Lilly & Co.*, Civil Action No: 2:03CV888, p. 5 (E.D. Va. March 22, 2004).

In determining whether to grant the motion to drop parties in this case, this Court must determine whether the plaintiff has failed to satisfy any of these preconditions for permissive joinder of parties defendant, exercising its broad discretion to promote the ends of justice in determining whether the preconditions are met.

## B. *Motion to Sever Based Upon Misjoinder of Claims*

As noted above, the preconditions applicable to misjoinder of parties in Virginia (claims against them must "arise out of the same transaction or occurrence") also apply to misjoinder of claims in Virginia (such claims must "arise out of the same transaction or occurrence"). Before applying these identical preconditions to the allegations in this suit, the Court will review the statutory provision permitting severance upon a finding of misjoinder of *claims*, as well as the standard by which such severance motions are considered.

### 1. *Statutory Provisions*

Magier and PAC ask this Court to sever the *claims* against the healthcare providers from the claims against the pharmaceutical manufacturers in this case. The Motion to Sever jointly filed by CPA and Kay makes the same request, relying upon the same arguments of PAC and Magier. Maryview also makes the same request.

---

[6] Notably, Fed. R. Civ. P. 18(a), providing for joinder of "claims," allows a party to assert any and all claims that it has, and the phrase "transaction or occurrence" limits only counterclaims and parties. Therefore, the federal standard applicable to joinder of claims is broader than the Virginia statute and rule. *Doe v. Carilion Medical Center*, 65 Va. Cir. 104, 2004 Va. Cir. LEXIS 114, *7, 2004 WL 1470342, *2 (2004).

Va. Code § 8.01-281(B) provides that a "court may, upon motion of any party, order a separate trial of any claim . . . and of any separate issue or of any number of such claims. . . ."[7] Furthermore, Va. Code § 8.01-272, addressing joinder of tort and contract claims in one civil action, provides that "[t]he court, in its discretion, may order a separate trial for any claim."

These statutes clearly address claims, rather than parties. The plain language of these statutes makes it clear that courts of Virginia are to order severance of claims that do not arise out of the same transaction or occurrence and are therefore misjoined.

### 2. Standard for Consideration

As noted above in the discussion of misjoinder of parties, the Virginia Supreme Court recognized in *Fox*, 234 Va. at 423, 362 S.E.2d at 705, that the applicable Virginia statute and rule create the preconditions by which a motion to sever based upon misjoinder of claims should be judged. Va. Code § 8.01-281 provides in pertinent part:

> A. A party asserting . . . a claim . . . may plead alternative facts and theories of recovery against alternative parties, provided that such claims . . . so joined arise out of the same transaction or occurrence. . . .
>
> B. The Court may, upon motion of any party, order a separate trial of any claims. . . .

Va. Code § 8.01-272 provides in pertinent part:

> In any civil action, a party may plead as many matters, whether of law or fact, as he shall think necessary. A party may join a claim in tort with one in contract provided that all claims so joined arise out of the same transaction or occurrence. The court, in its discretion, may order a separate trial for any claim.

---

[7] The federal procedural counterpart to Virginia's statutory provisions permitting severance is Fed. R. Civ. P. 21, which provides that "[a]ny claim against a party may be severed and proceeded with separately."

In addition, Va. Sup. Ct. R. 1:4(k) provides in pertinent part:

> A party asserting . . . a claim . . . may plead alternative facts and theories of recovery against alternative parties, provided that such claims . . . arise out of the same transaction or occurrence. When two or more statement are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims . . . as he has regardless of consistency and whether based on legal or equitable grounds.

Therefore, review of these statutes and the Supreme Court rule confirms that joinder of claims or causes of action is conditioned upon their meeting the requirement that they "arise out of the same transaction or occurrence."

The language of these statutes provides the standard that a trial court should employ in deciding whether to grant such a motion to sever alleging misjoinder of claims. Va. Code § 8.01-281(B) states that the court "may" order a separate trial, but gives no additional guidance. Likewise, Va. Code § 8.01-272 provides that the court "may" order a separate trial "in its discretion," but gives no further guidance. While this Court normally applies the plain language of a statute or rule, in the present context, the legislature is deemed to have knowledge of the manner in which the Virginia Supreme Court applied the word "may" in analyzing misjoinder questions under Va. Code § 8.01-5(A). *Gilliam v. Commonwealth*, 21 Va. App. 519, 524, 465 S.E.2d 592, 595 (1996). As noted above, the Virginia Supreme Court held in *Lee v. Mutual Reserve Fund Life Ass'n*, 97 Va. at 162, 33 S.E. at 557 that "the word *may* in a statute of this kind which is in furtherance of justice means the same as *shall*." Therefore, where misjoinder of claims is present because such claims fail to arise out of the same transaction or occurrence, it is this Court's opinion that severance of such misjoined claims is required by these statutes and binding precedent of the Virginia Supreme Court. However, as discussed below, where there is no misjoinder of claims, the word "may" is read in a different context and a trial court retains much broader discretion in determining whether to order discretionary severance.

Accordingly, in determining whether to grant the motion to sever misjoined claims in this case, this Court must determine whether the plaintiff has failed to satisfy any of these preconditions for permissive joinder of parties defendant, exercising its broad discretion to promote the ends of justice in determining whether the preconditions are met.

## C. *Same Transaction or Occurrence*

In the "Revisers' Note" to Va. Code § 8.01-5, it is stated that this code section "carries forward the policy of former § 8-96 by providing that parties may be added to or dropped from an action without prejudice until all parties necessary for the just disposition of the case are before the court." However, as reviewed above, the alternative facts pleaded against alternative parties must arise out of the same transaction or occurrence. Similarly, as also reviewed above, causes of action and claims asserted in the same action must arise out of the same transaction or occurrence. Therefore, the Court must determine whether the alternative facts pleaded against the defendants, and the causes of action asserted against the defendants arise out of the same transaction or occurrence.

### 1. *Applicable Case Law*

The Virginia Supreme Court applied this "same transaction or occurrence" requirement in *Fox*, 234 Va. 412, 362 S.E.2d 699. In that case, plaintiff was engaged in the business of producing and promoting shows and concerts. *Id.* at 615-17, 362 S.E.2d at 701-02. Defendant Deese was the City Manager. Fox met with Deese and others in a series of meetings in late May and early June 1980 regarding Fox's promotion of an outdoor concert and the terms and conditions Fox had to meet to secure the use of the City Stadium. *Id.* At the conclusion of the final meeting, Deese directed another city employee to prepare a written contract reflecting the agreement and Fox was directed to secure written contracts with all concert performers by June 16, 1980, and was assured he could hold the concert at the City Stadium if he met the terms of the agreement. *Id.*

The contract prepared by the City employees differed from the terms agreed upon at the meetings, and Fox asked Deese to remove the new conditions, which Deese refused to do as of June 19, 1980. *Id.* Fox, however, had already committed to the performers and was in a position from which he could not retreat and ultimately was forced to agree to the new requirements. *Id.* at 417, 362 S.E.2d at 702. One of these requirements was that Fox pay city staff double time on Independence Day, July 4th, purportedly due to a city policy requiring such double time. However, there was no such policy. Among other false representations, the city assured Fox that tickets to the event were on sale by computer through Ticketron. *Id.*

Fox alleged, in his suit against Deese and the other city officials involved in the transaction, breach of contract, malicious and reckless disregard for his rights under contract, and conspiracy to interfere with his contract with the city for the promotion of the concert. The trial court dismissed the suit, relying, among other things, on misjoinder of parties defendant and misjoinder of causes of action. *Id.* at 422, 362 S.E.2d at 705. Fox contended on appeal that he was "making claims against some of the defendants jointly as well as against them severally, and further that he [was] pursuing counts against different defendants for separate, independent acts." *Id.*

The Virginia Supreme Court stated that when the legislature adopted Va. Code §§ 8.01-272 and 8.01-281 and when the Virginia Supreme Court adopted Rule 1:4(k) (involving parties and claims), such "statutes and rule represent[ed] a radical departure from the common-law pleading rule stated in" *Norfolk Bus Term. v. Sheldon*, 188 Va. 288, 296, 49 S.E.2d 338, 341 (1948), where it was said that "under our system of pleading, unless the acts of independent tortfeasors concur in producing a single indivisible injury or damage, they may not be sued jointly in a single action." *Fox*, 234 Va. at 423, 362 S.E.2d at 705. After reviewing the plain language of the two statutes and the Supreme Court rule, the *Fox* Court then concluded that "a fair reading of the amended motion for judgment shows that Fox has pleaded alternative theories of recovery against the same group of defendants and that the claims arise out of the same transaction or occurrence." *Id.* The Court added that "[m]oreover, a trial court has the discretion to order a separate trial of any claim to attain the ends of justice. Code § 8.01-272," in effect recognizing that, even if there is no misjoinder of claims or parties, a trial court may still order discretionary severance of claims.

The Virginia Supreme Court later considered the question of whether the "same transaction or occurrence" requirement had been met in *Powers v. Cherin*, 249 Va. 33, 37, 452 S.E.2d 666, 669 (1995). In that case, the trial court had relied upon misjoinder of causes of action to sustain a defendant's demurrer. While the trial court's decision was based upon misjoinder of the causes of action, the Court's discussion of the "same transaction or occurrence" requirement that applies to *both* misjoinder of causes of action and misjoinder of parties is instructive for our discussion. The *Powers* Court noted that Va. Code § 8.01-281 and Va. Code § 8.01-272 were:

adopted at the same time to grant a party asserting any claim or defense the right to join alternative claims or defenses, that is, to present alternative statements of the facts or alternative legal theories. Revision of Title 8 of the Code of Virginia, Report of the

> Virginia Code Commission to The Governor and The General Assembly of Virginia, 1 House & Senate Documents, H. Doc. No. 14 at 185, 191 (1977). Both enactments are conditioned, however, upon the requirement that the claims joined must "arise out of the same transaction or occurrence," statutory language so plain and unambiguous that it requires no interpretation.

*Id.* In *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 179, 576 S.E.2d 504, 515 (2003), in a dissent joined by three members of the Virginia Supreme Court addressing an issue different from severance, Justice Kinser described the General Assembly's adoption of Va. Code §§ 8.01-272 and 8.01-281 as a move toward a "transactional approach." The dissent noted that the "same transaction or occurrence" concept "advance[s] public policies embracing judicial economy, ending litigation, providing certainty in legal relationships, and preventing party harassment."

In *Powers*, the plaintiff was injured while riding in a motor vehicle that was struck by another motor vehicle. *Id.* at 34, 452 S.E.2d at 667. The plaintiff filed an action for damages against the other driver seeking recovery for her personal injury. Later, plaintiff was permitted to amend her motion for judgment to add a physician who allegedly committed malpractice and aggravated her original injuries while treating plaintiff for injuries sustained in the automobile accident. *Id.* at 35-36, 452 S.E.2d at 668. The Court concluded that the plaintiff's claim against the driver of the other vehicle for "negligent operation of an automobile does not arise from the same transaction or occurrence as the plaintiff's claim against [the physician] for medical malpractice" since negligent operation of a motor vehicle is a separate transaction or occurrence from the medical malpractice. *Id.* The Court also focused on the fact that the two defendants could not be held liable for injuries of the other. *Id.* The Court further noted that the plaintiff sought damages from the physician for "distinct injuries resulting from malpractice that are not mere aggravation." *Id.*

The Virginia Supreme Court essentially recognized that there was a misjoinder of the causes of action because the causes of action asserted by the plaintiff did not arise from the same transaction or occurrence and that there was a misjoinder of the claims against the defendants because the claims against the defendants did not arise from the same transaction or occurrence. Accordingly, the Court recognized that there was a double misjoinder in the case, even though the trial court relied only upon misjoinder of the party defendants.

The requirement that claims arise out of the same transaction or occurrence was recently considered by another Virginia circuit court in *McGladrey & Pullen, L.L.P. v. Shrader*, 62 Va. Cir. 401, 406-07 (2003). In that case, an accounting firm and a transferee of its assets sued a certified public accountant (CPA) for misappropriating confidential information and soliciting former clients in violation of a confidentiality and non-solicitation agreement. The defendant CPA alleged misjoinder of claims, arguing that the claims did not arise from the same transaction or occurrence because the events occurred over at least a two or two and one-half month period and because the claims ran the gamut from downloading confidential data from a computer to general business conspiracy. *Id.* In finding no misjoinder, that court noted that the applicable statutes discussed above made clear that all of the claims do not have to be based on identical facts, and that such a restrictive reading would result in an unnecessary fragmentation of litigation. *Id.*

The health-care provider defendants assert that another circuit court opinion, *Lee v. Mann*, 51 Va. Cir. 465 (2000), is directly on point. In *Lee*, the plaintiff asked the court to reconsider its prior ruling finding misjoinder of defendants in her medical malpractice and products liability lawsuit. The court considered plaintiff's argument that the defendants were joint tortfeasors whose actions brought about a single indivisible injury. *Id.* at 465-66. The court noted that the claim against the doctor was for medical malpractice in prescribing the drug, while the claim against the manufacturer was for products liability where the claims are founded upon negligence, failure to warn, and breach of express and implied warranties. *Id.* Without further explanation (probably because the court had provided a thorough explanation in its original ruling), the *Lee* court concluded that "the facts causing injury do not arise out of the 'same transaction or occurrence'." *Id.* By contrast, the plaintiff in this case makes a broader array of claims against the health-care provider defendants, including negligence in providing treatment to plaintiff's decedent, as well as negligently diagnosing, treating, prescribing, monitoring, and failing to warn.

In response to *Lee*, the plaintiff contends that there are Virginia decisions from other circuit courts involving claims joined against pharmaceutical manufacturers and prescribing physicians which reached results contrary to *Lee*. In support of that assertion, plaintiff cited and provided copies of the orders in the case of *Vaughan v. American Home Products Corp.*, At Law No. CL99-3 (Chesterfield County Circuit Court, Oct. 27, 1999) (denying motion to sever claim against physician and denying motion to drop physician as party), and the case of *Evers v. American Home Products*, At Law No. 187421 (Fairfax County Circuit Court, Aug. 29, 2000) (denying motion to sever claim

against physician over objection by physician that plaintiff's claim against such physician did not arise out of the same transaction or occurrence as her claims against defendant American Home Products Corporation). Unfortunately, these Orders provide even less information than the Opinion in *Lee* did regarding the reasons supporting their ruling, and they are therefore of little help to this Court in evaluating the issue before the Court.

Plaintiffs have also called this Court's attention to *Thelen v. Wyeth-Ayerst Laboratories et al.*, 1999 WL 240330, *2 (E.D. Pa. 1999), contending that the *Lee* decision is directly contrary to the ruling from the federal court conducting the multi-district litigation for the diet drug at issue in *Lee*. This Court notes that the reasoning in *Thelen* is instructive to the extent that it addresses the requirement that claims against different party defendants arise out of the same transaction or occurrence. However, the Court also notes that the *Thelen* court analyzed the joinder issues with reference to the different causes of action or claims that were asserted and the federal standard in that regard is broader (not requiring the claims arise from the same transaction or occurrence) than the Virginia standard. Therefore, the application of that case is limited.

Plaintiff also called the Court's attention to the decisions in *Alexis v. GlaxoSmithKline*, 2002 WL 1022261 (E.D. La. 2002), and *Rodriguez v. Abbott Laboratories*, 151 F.R.D. 529, 533 (S.D. N.Y. 1989), arguing that they also support plaintiff's contention that claims against pharmaceutical manufacturers and the health care providers that prescribe and monitor drugs from such manufacturers do arise from the same transaction or occurrence. While the context of *Rodriguez* was somewhat different from that presently before the Court, its discussion is instructive. In concluding that the claims arose from the same transaction or occurrence, that court stated that the administration of the drug and the health care provider's treatment of the plaintiff were part of a series of occurrences that allegedly contributed to her injuries, thereby creating overlapping questions of fact regarding the cause and extent of plaintiff's injuries and the relative liability of the health care provider and the drug manufacturer. *Rodriguez*, 151 F.R.D. at 533.

At oral argument, Magier and PAC addressed the case of *In re Rezulin Products Liability Litigation*, 2003 U.S. Dist. LEXIS 9173 (S.D. N.Y. 2003), an unpublished decision adopting a Magistrate Judge's Report and Recommendation to grant a motion to drop a physician as a defendant and sever medical malpractice claims against him from warranty claims in a pharmaceutical case referred by the Judicial Panel on Multi-District Litigation. The District Court in *Rezulin* dropped the physician, noting that the malpractice claim was based in substance on the physician's failure to

diagnose plaintiff's alleged liver dysfunction, and the breach of warranty and other claims went principally to the safety and efficacy of the drug and had little to do with the malpractice claim. *Id.* at *2.

A review of the Report and Recommendation from the Magistrate Judge clarifies the basis for the ruling of the district court. *In re Rezulin Products Liability Litigation*, 00Civ. 2843 (LAK) (S.D. N.Y. April 28, 2003). According to the Report and Recommendation, the plaintiff in that litigation began taking rezulin in May 1997 and only took the drug for several months. The court noted that plaintiff alleged the physician failed to monitor and test her liver function. The court also noted that, after December 1997, physicians were advised by the drug manufacturer to monitor their patient's liver enzyme levels, but the complaint did not allege that plaintiff was still taking rezulin in December 1997. Therefore, the Magistrate Judge found that the complaint did not allege a basis for supposing that the physician knew of the need to monitor because of the short duration of the patient's use of the drug, and, accordingly, there could be no claim for negligent failure to warn and monitor. Opinion, pp. 5-6. Accordingly, the court found that what survived was the plaintiff's claim that the physician failed to diagnose her cardiac damage and liver failure and there was no factual nexus between the two claims against the different defendants. By contrast, in the present case, the plaintiff has stated a claim for negligent failure to warn, and that allegation has not been tested by any evidence.

With these general principles in mind regarding the manner in which other courts have addressed this issue, the Court must apply such principles to the allegations of this suit and determine whether there is misjoinder on the facts and causes of action alleged here.

## 2. No Misjoinder

It is clear from *Fox* and *Powers* that as long as alternative claims against alternative defendants arise out of the same transaction or occurrence, as in *Fox*, it is not required (in order to join the claims and defendants) that the acts of the alternative defendants concur in producing a single indivisible injury and damage. However, where there are two separate transactions or occurrences, as in *Powers*, such claims and defendants cannot be joined.

In *Powers*, the Court noted that there were two transactions or occurrences: "first, the negligent operation of a motor vehicle by defendant resulting in an accident; and, second, the negligent medical treatment of plaintiff at a later date by Dr. Cherin resulting in injury." *Powers*, 249 Va. at 37, 452 S.E.2d at 669. Similarly, in the case before this Court, plaintiff has

alleged claims against the pharmaceutical manufacturers for negligence from design through inspection, negligence in failing to warn, breach of implied and express warranties, false and fraudulent representations, and failure to disclose. Plaintiff also alleges claims against the health care providers for negligence in providing treatment to plaintiff's decedent, including negligently prescribing, negligently monitoring, and negligently failing to warn. Defendants Magier, PAC, Kay, CPA, and Maryview would have this Court hold that these claims arise out of separate transactions or occurrences and that, if they do not, then the Court should exercise its discretionary severance power and such claims should at the very least be severed for judicial economy reasons.

Looking at the more recent of these cases, *Powers*, the Court first asks whether the pharmaceutical manufacturers can be liable for the health care providers' alleged negligence, and, conversely, whether the health care providers can be liable for the pharmaceutical manufacturers' negligence and breach of warranties. This requires us to consider whether the pharmaceutical manufacturers and health care providers can be joint tortfeasors with joint and several liabilities.

In his review of joint and several liability in *Personal Injury Law in Virginia*, Professor Friend notes that:

> At common law, joint tortfeasors were persons who acted in concert to cause a plaintiff's injury. In the United States, the definition of "joint tortfeasors" was judicially extended to include those who did not act in concert, but whose concurrent wrongdoing caused a single injury. Virginia has followed this latter view.
>
> It is often stated in the Virginia cases that joint tortfeasors are jointly and severally liable. Essentially, this means that where the damages caused by the wrongful acts of two or more persons produce a single injury, both tortfeasors may be held liable for the entire amount of the injured person's damages. The law does not attempt to apportion the injury, and each joint tortfeasor is held liable for the whole of the damages. This is true even though the wrongful acts of the various tortfeasors are not considered, each being held liable for the whole of the damages even though the others were equally culpable, or contributed in a greater or lesser degree to the injury. For these reasons, it is often said that a defendant cannot escape liability for his own negligence merely by showing that another person was also negligent.

Charles E. Friend, *Personal Injury Law in Virginia*, § 14.1 (3d ed. 2003).

Applying these principles, first we look to plaintiff's claim that the health-care providers were negligent in providing treatment to plaintiff's decedent, which alleged negligence is based upon negligently prescribing, negligently monitoring, and negligently failing to warn. The question arises: can plaintiff recover against the health care providers and the pharmaceutical manufacturers for joint negligence?

Clearly, where these defendants allege that others were in part, or in whole, responsible for damages, they raise the possibility that their joint negligence could have resulted in the death alleged by plaintiff. While that may not mean that each and every aspect of the claims against a particular defendant can result in a finding of negligence against the other defendants, this Court does not believe that is the test. The test at this stage of the proceedings is whether the claims against the defendants, as alleged, arise out of the same transaction or occurrence. *See Todd v. Merrell Dow Pharmaceuticals*, 942 F.2d 1173, 1176 (7th Cir. 1991) (noting that physician and pharmaceutical manufacturer were joint tortfeasors where mother alleged son's respiratory problems were caused by exposure to an anti-labor drug administered by physician).

Plaintiff asserts a wrongful death action against each of the defendants, alleging that the actions of each defendant caused her decedent's death. As this Court pointed out in its Opinion and Order of September 21, 2004:

> "an action arising during the decedent's lifetime for injuries which subsequently caused the decedent's death is, in effect, transformed into a wrongful death action by Virginia Code § 8.01-56." Friend, *supra* § 15.1. Therefore, in Virginia today, there can be only one recovery for an injury that causes death, and that recovery belongs to the decedent's next of kin as specified in the wrongful death statute. *Id*. Such action may begin as a personal injury action and be converted to a wrongful death action upon the related death, or such action may begin as a wrongful death action upon death where no personal injury action is pending. In this case, the action began as a wrongful death action upon death because there was no personal injury action pending.[8]

The Virginia Wrongful Death statute does not create a new "cause of action" but only a "right of action" in a personal representative to enforce the

---

[8] 65 Va. Cir. 485, 496. [Reporter's Note]

decedent's claim for any "personal injury" that caused death. *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991). Therefore, a death caused by personal injury is necessary for a personal representative, such as plaintiff, to have a right of action.

Similarly, the thrust of the plaintiff's claim against the pharmaceutical manufacturers is that their negligence and breach of warranties caused her decedent's death. The right of action against each defendant rests upon the allegation that decedent's *death* resulted from the negligence of such defendants, irrespective of whether such death may have been set in motion by earlier actions of any of the defendants. Therefore, utilizing the standard used in *Powers* by asking whether each of the defendants can be held liable for each other's actions, it appears that such an outcome is possible under some of the claims asserted by plaintiff. For example, it is conceivable that the pharmaceutical manufacturers could be held liable for the health-care providers' actions in prescribing and monitoring the drugs at issue if the pharmaceutical manufacturers' failure to properly warn and other breaches or actions combined with negligence by the health-care providers to produce the death. Conversely, the health-care providers could likewise be held liable for the pharmaceutical manufacturers' actions in allegedly failing to properly warn or commit other breaches or action if such failure combined with the health-care providers' negligence in producing the death.

In the present case, just as in *Fox*, the plaintiff has pleaded alternative theories of recovery against the same group of defendants and the claims arise out of the same transaction or occurrence. *Fox*, 234 Va. at 423, 362 S.E.2d at 705. Furthermore, requiring the plaintiff to plead her causes of action in separate actions, or against separate defendants, *if* such claims arose out of the same transaction or occurrence but were not based on *identical* facts, would work a restrictive reading on the statutes and rule that would result in an unnecessary fragmentation of litigation. *Shrader*, 62 Va. Cir. at 406-07.

The *Powers* decision is also instructive. *Powers*, 249 Va. at 37, 452 S.E.2d at 667. The Court there concluded that the negligence of the driver of the offending vehicle and the negligence of the physician that treated the victim did not arise out of the same transaction or occurrence. The result in that case might have been different if the physician had somehow advised the offending driver or worked on the vehicle of the offending driver or had any other connection to the event prior to his post-accident treatment. While such suggestions may seem absurd, it is that kind of factual construction that would have to apply to make those case facts analogous to those presently before this Court. Furthermore, this fanciful factual construction points to the fact that application of *Powers* yields a different outcome on these allegations.

The wisdom of joining the claims against the two sets of defendants in the same action is borne out by the observation in *Rodriguez*, 151 F.R.D. at 533, that the administration of the drug and the health-care provider's treatment of the plaintiff were part of a series of occurrences that allegedly contributed to her injury, thereby creating overlapping questions of fact regarding the cause of plaintiff's injuries and the relative liability of the health-care provider and the pharmaceutical manufacturer. The same can be said in this case of the health-care providers' treatment of plaintiff's decedent and the administration of the drugs manufactured by the pharmaceutical companies.

Finally, plaintiff argues that the pharmaceutical manufacturers' assertion of the "learned intermediary" doctrine makes severance illogical since the manufacturers are asserting that the health-care provider defendants were informed and fully knowledgeable about the risks associated with the drugs at issue, citing *Ohler v. Purdue-Pharma, L.P.*, 2002 WL 88945, 2002 U.S. Dist. LEXIS 2368 (E.D. La. 2002). It is true that Lilly asserts that the treating physician was in the position of a sophisticated user fully knowledgeable and informed with respect to the risks and benefits of Zyprexa. Grounds of Defense, para. 9 of affirmative defenses. Lilly also asserts that the injuries alleged were caused by independent intervening acts of negligence of others. Grounds of Defense, para. 6 of affirmative defenses. As the court said in *Ohler*, raising such a defense virtually "dismembers any misjoinder claim." *Id*. Therefore, based upon the assertions contained in the affirmative defense of Lilly, issues of fact common to both the health-care provider defendants and the pharmaceutical manufacturer defendants will likely be presented at trial, militating against severance of such claims. *See Durkee v. Virginia Vascular Assocs.*, 61 Va. Cir. 468, 473 (2003); *see also Talley v. Danek Medical, Inc.*, 179 F.3d 154, 163 (4th Cir. 1999); *Pfizer, Inc. v. Jones*, 221 Va. 681, 684, 272 S.E.2d 43, 44 (1980).

This issue was also examined recently in *Hall v. Elkins Sinn, Inc.*, 2004 U.S. App. LEXIS 12255, **7 (5th Cir. June 22, 2004) (unpublished disposition). There, the plaintiff was prescribed gentamicin by her physician and ultimately suffered ototoxicity. Though in a different procedural context from the present case, the court there noted that the question of whether the plaintiff's development of ototoxicity "was the result of the doctor's negligence or the manufacturer's inadequate warnings represents two separate causes of action rather than two separate transactions or occurrences." *Id*.

The Court observes that at least one of the pharmaceutical manufacturers has asserted the learned intermediary defense, in essence claiming that the health-care providers knew of the risks associated with the drugs at issue and

were in a better position than the pharmaceutical manufacturers to prevent injury and death. This Court agrees with the *Ohler* court that such a defense, in these circumstances, virtually "dismembers any misjoinder claim," *Ohler*, 2002 WL 88945, *7, 2002 U.S. Dist. LEXIS 2368, *24, because issues of fact common to both health-care provider defendants and pharmaceutical manufacturer defendants will have to be presented at trial to address such a learned intermediary defense. Furthermore, since successful assertion of the learned intermediary defense might be a complete bar to liability against the pharmaceutical manufacturers, *Pfizer, Inc.*, 221 Va. at 684, 272 S.E.2d at 44; *Hamlett v. Virginia Vascular Assocs.*, 61 Va. Cir. 468, 473 (2003); *cf. Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016-18 (8th Cir. 2004), and since at least one of the pharmaceutical manufacturers has asserted the learned intermediary doctrine,[9] it is likely the issue will remain for trial, thus militating against severance.

For these reasons, the Court finds that the claims against the two groups of defendants in this case arise out of the same transaction or occurrence and there is no misjoinder of defendants and no misjoinder of claims.

## D. *Discretionary Motion to Sever*

### *1. Statutory Provisions*

Having determined that there is no misjoinder of party defendants, that still leaves the question of whether this Court should exercise its discretion, pursuant to defendants' motion under Va. Code § 8.01-281(B), or of the Court's own volition pursuant to § 8.01-272, to sever the health-care provider claims from the pharmaceutical manufacturers claims. Magier and PAC ask this Court to sever the *claims* against the healthcare providers from the claims against the pharmaceutical manufacturers in this case. The Motion to Sever filed jointly by CPA and Kay makes the same request, relying upon the same arguments made by PAC and Magier. Maryview makes the same request.

Va. Code § 8.01-281(B) provides that a "court may, upon motion of any party, order a separate trial of any claim . . . and of any separate issue or of any

---

[9] The Court will not assume here that Astrazeneca will assert such a defense since, as noted above, there is no responsive pleading from that defendant in the Court's file.

number of such claims. . . ."[10] Furthermore, Va. Code § 8.01-272, addressing joinder of tort and contract claims in one civil action, provides that "[t]he court, in its discretion, may order a separate trial for any claim." These statutes clearly address claims, rather than parties. However, the significance of that distinction is all but non-existent in a case such as this where the different claims completely coincide with the different defendants. Like the federal rule, it is clear that the application of these Virginia statutes is not limited to problems of misjoinder, though it does include misjoinder problems.[11] *C. L. Ritter Lumber Co. v. Consolidation Coal Co.*, 283 F.3d 226, 229-30 (4th Cir. 2002) ("[t]here are occasions where the last sentence of Rule 21 may properly be used to sever a claim that has been properly joined"). Therefore, the plain language of these statutes makes it clear that courts of Virginia may issue severance orders to structure a case for the efficient administration of justice, even in the absence of misjoinder or non-joinder of parties. *Fox v. Deese*, 234 Va. 412, 423, 362 S.E.2d 699, 705 (1987) ("a trial court has the discretion to order a separate trial of any claim to attain the ends of justice").

### 2. Standard for Consideration

The language of these statutes provides the standard that a trial court should employ in deciding whether to grant such a motion. Va. Code § 8.01-281(B) states that the court "may" order a separate trial, and Va. Code § 8.01-272 provides that the court may order a separate trial "in its discretion." The Court here considers a motion for discretionary severance of claims without regard to misjoinder. The Court has determined that there is no misjoinder of parties or of claims. Therefore, the only question remaining is whether the Court should exercise its discretion to sever.

In this context (where misjoinder is not an issue), the plain language of the statute is discretionary rather than mandatory. *Johnson v. Windsor Ins. Co.*, 268 Va. 197, 201, 597 S.E.2d 31, 34 (2004) (in determining the meaning of a statute, the Court looks to plain language used by legislature). Therefore, the plain language of the applicable statutes reflects great discretion provided

---

[10] The federal procedural counterpart to Virginia's statutory provisions permitting severance is Fed. R. Civ. P. 21, which provides that "[a]ny claim against a party may be severed and proceeded with separately."

[11] While Fed. R. Civ. P. 21 permits a court to drop *parties* on such terms as are just to remedy misjoinder, "in lieu of dropping parties in a misjoinder situation," the court may "order severance of the *claims* by or against misjoined parties." (emphasis added). 4-21 *Moore's Federal Practice – Civil* § 21.02[1].

to the trial court. *Cauthorne v. First National Bank of Maryland*, 40 Va. Cir. 19, 24 (1995) (severance decision within sound discretion of trial judge and is analogous to procedural determinations like continuances and venue where Virginia Supreme Court has described standard as trial court's sound discretion). This standard is no different than in the federal system, though, in the federal courts, alternative claims are not required to arise from the same transaction or occurrence. *See* Fed. R. Cir. P. 18(a); *see* Revisers' Note to Va. Code § 8.01-272. In federal practice, Fed. R. Civ. P. 21 provides a trial court with wide authority to sever claims. While the federal rule does not indicate that the trial court is to make such a decision based upon its own discretion, federal courts have so construed the rule. For example, in *Rodin Props.–Shore Mall, N.V. v. Cushman & Wakefield, Inc.*, 48 F. Supp. 2d 709, 721 (D. N.J. 1999), the court stated that the "decision to sever a claim or to try it separately is left to the discretion of the trial court." In *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Penn. 2003), the court reviewed other case law regarding the standard and concluded that a trial court has "virtually unfettered discretion" in determining whether or not severance is appropriate. Accordingly, the broad discretion afforded a trial court in Virginia on this issue appears to be no different from that applied in the federal courts. Therefore, the Court will also look to federal court decisions construing such motions, as such decisions are instructive on this issue.

While trial courts have great discretion in making their determinations on such motions, some courts have identified factors for consideration. For example, in *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D. N.Y. 1995), the court noted that "[i]n deciding whether severance is appropriate, courts generally consider (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted." Finding that these factors provide a useful analytical framework, the Court will utilize such factors in analyzing discretionary severance under these circumstances. Furthermore, the health-care provider defendants suggest that it would be helpful for the Court to look to the factors in Va. Code §§ 8.01-267.1 and 8.01-267.5, though such factors are not binding. While some of those factors are subsumed in the four factors referenced above, others are not. Therefore, to the extent they are not addressed by the four factors above, the Court will also examine application of these factors.

### 3. Application of the Factors

#### a. Are the Issues Different and Will Different Witnesses and Evidence be Required?

The health-care provider defendants argue that the issues to be decided as to the pharmaceutical defendants are greatly different from those to be decided as to the health-care providers. Specifically, defendants argue that the factual issues involving the manufacture, design, testing, and marketing are vastly different from the factual issues pertaining to the exercise of medical judgment by the health care providers. Furthermore, they claim that the proof of causation necessary in the medical malpractice claims is different from the proof on the express and implied warranty claims where no such causation proof is necessary. They further argue that the plaintiff is entitled to unlimited damages against the pharmaceutical manufacturers, while plaintiff is limited by statute as to damages recoverable against the health care providers.

Plaintiff counters that the claims against the health care providers and the pharmaceutical manufacturers are intimately intertwined because the manufacturers made representations to prescribing physicians regarding the efficacy of the drugs at issue and these representations form the basis of the failure to warn claims against the health care providers, while any deficiency in such representations would form the basis for liability by the manufacturers. Plaintiff further claims that, under its negligent failure to warn theory, the manufacturers had a continuing duty to warn and this would create overlapping and concurrent duties on the part of the manufacturers and the health care providers. Plaintiff also argues that defendants are in error in asserting that decedent's cause of action against the manufacturers arose before the products were placed in the stream of commerce, since no cause of action against the manufacturers arose until decedent ingested the drugs on the order of the health care providers.

The Court analyzed some of these arguments above in its discussion of mandatory severance and misjoinder, concluding that the claims against these two groups of defendants arose from the same transaction or occurrence. While that conclusion does not foreclose discretionary severance, it informs the analysis. It is true that evidence regarding the manufacture, design, testing, and marketing of these drugs will not completely overlap with evidence and witnesses regarding the standard of care provided by the health-care providers, but some of that information will relate to the warnings provided by the manufacturers and the health-care providers. Furthermore, hearing the evidence and witnesses regarding both sets of issues will provide a more

complete picture to the fact finder and will avoid the confusion sometimes inherent in having an empty chair to which a defendant points during a trial. With the need for each set of defendants to testify regarding the learned intermediary doctrine, it is clear that the presence of the health-care providers will be required for a large part of any trial against the pharmaceutical manufacturers, even if such claims were severed. While the Court recognizes that there are issues alleged that have differing levels of proof and causation, the Court also recognizes that there are common negligence claims against each of the defendants here. It seems inescapable that each of the defendants will have to testify as to claims made against the other, whether the claims against the two sets of defendants are severed or remain in this same action. While the health-care providers may well find that the complexity of what would otherwise be a somewhat run-of-the-mill medical malpractice case will be increased due to the warranty issues, among other issues, against their co-defendants, the Court must also consider the plaintiff's interest in seeking to have all of these issues heard by one fact finder at one time.

The plaintiff also alleges a continuing obligation on the part of the pharmaceutical manufacturers to notify of changes in warning as new information is gained. If such a duty is shown, it only increases the likelihood that evidence against one set of defendants will overlap evidence against the other set of defendants. Severing plaintiff's claims against the health-care providers would neither serve the interests of justice nor further the prompt and efficient resolution of this litigation. *German*, 896 F. Supp. at 1400. Requiring plaintiff to present much of the same evidence at separate trials would be repetitious, prolong the ultimate termination of this litigation, and place an unnecessary burden on the plaintiff. The court accepts the proposition that a plaintiff should be put to the burden of proving her case, but reason dictates that, where the proof as to separate claims and parties is interrelated to the extent here, requiring separate trials would work an injustice in allocating the burden of presenting such evidence. *Id.*

### b. Will the Plaintiff be Prejudiced by Severance or Will the Health-care Providers be Prejudiced by Denial of Severance?

As noted above, the plaintiff would be prejudiced if severance is granted because plaintiff would have to produce testimony at two separate trials, much of which would overlap. Additionally, there is the risk of potentially inconsistent verdicts should the fact finder conclude, for example, in one case that the pharmaceutical manufacturers are shielded from liability because of the learned intermediary doctrine, while in the other case finding that the

health-care providers are not liable based upon an argument that the pharmaceutical defendants failed in their duties. On the other hand, the fact finder could reach an inconsistent result by reversing that outcome. While such an outcome could occur without being inconsistent, it could also occur and be inconsistent.

The health-care providers could be prejudiced by denial of severance because they would have to participate in a trial in which some of the issues required proof not directly relevant to them. Additionally, if severance is denied, the health-care providers will be subject to potentially higher costs and attorneys' fees during discovery and trial than they would if they were severed and only had to be concerned with discovery issues and trial related to themselves.

The health-care providers also argue that they would be prejudiced without severance because there are different levels of proof required as between the health-care provider defendants and the pharmaceutical manufacturers. For example, the health-care providers suggest that the plaintiff need not show causation in order to recover on her products liability claims, that such causation must be proved on the medical malpractice claims, and that joining the claims against the two sets of defendants would therefore require differing levels of proof. However, in *Collier v. Rice*, 233 Va. 522, 525, 356 S.E.2d 845, 847 (1987), the Virginia Supreme Court recognized that the plaintiff must show that the breach of warranty caused the damage complained of. See *McCauley v. Purdue Pharmaceutical, L.P.*, 331 F. Supp. 2d 449, 464 (W.D. Va. 2004) (recognizing need for proof of proximate cause and use of expert testimony to do so); *Stokes v. Geismar*, 815 F. Supp. 904, 908 (E.D. Va. 1993) (stating that Virginia law requires proof of proximate cause and citing *Cape Charles Flying Serv., Inc. v. Nottingham*, 187 Va. 444, 451-52, 47 S.E.2d 540, 544 (1948)).

Professor Friend also addressed this issue in his text on personal injury law. As with other tort actions, there can be no liability in a products liability action unless the plaintiff can show that the defective or dangerous condition caused the injury. See *Pepsi-Cola Bottling Co. v. Yeatts*, 207 Va. 534, 537, 151 S.E.2d 400, 403 (1966); *Horton v. W. T. Grant Co.*, 537 F. 2d 1215, 1219 (4th Cir. 1976); Friend, *supra* § 19.1. In order to establish causation, a plaintiff must introduce evidence sufficient to establish that the resulting injury was a probability, rather than a mere possibility, *White Consol. Indus. v. Swiney*, 237 Va. 23, 28, 376 S.E.2d 283, 285-86 (1989), and where plaintiff only shows that the injury might be due to one of several causes, this is not sufficient to support a recovery. *Pepsi Cola Bottling Co.*, 207 Va. at 537, 151 S.E.2d at 403. While it is not necessary to establish causation with such certainty as to exclude every other possible cause, *White Consol. Indus.*, 237 Va. at 28, 376 S.E.2d at 285-86, "expert testimony is often utilized to establish causation." Friend, *supra* § 19.1 (*citing White*, 237 Va. at

28, 376 S.E.2d at 285-86). Such "[e]xpert testimony is usually necessary in products liability cases to establish defectiveness or dangerousness of the product, causation, etc. Only rarely is lay testimony alone sufficient." *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 430-32, 219 S.E.2d 685, 689 (1975). Furthermore, absent established industry standards, it is a matter of expert opinion as to what design makes a product safe for its intended use. Friend *supra* § 19.1.

Similarly, "[e]xpert testimony is normally necessary in medical malpractice actions" in order "to establish (a) standard of care, (b) a deviation from that standard, and (c) that this deviation was the proximate cause of the damages." Friend, *supra* § 20.5, *citing Beverly Enterprises-Va. v. Nichols*, 247 Va. 264, 267, 441 S.E.2d 1, 6 (1994); *Nichols v. Kaiser Found. Health Plan*, 257 Va. 491, 498, 514 S.E.2d 608, 612 (1999). (noting expert testimony may not be necessary where act or omission was clearly negligent within common knowledge of layman). Therefore, since both sets of claims are quite likely to require expert testimony to prove causation (among other things), there is no substantial prejudice created on this proof issue as a result of the joinder.

Balancing the prejudice to plaintiff against the prejudice to the health-care provider defendants and considering the factors discussed above regarding issues and evidentiary differences, the danger that the health-care provider defendants will be prejudiced by having all the claims litigated in the same action as the claims against the pharmaceutical defendants is relatively insubstantial. *German*, 896 F. Supp. at 1401. Furthermore, some of that prejudice alleged by defendants can be eliminated by careful instructions to the jury. Some of the prejudice is also addressed by the fact that the health-care provider defendants will only have to participate in one trial versus having to testify in separate trials against each set of defendants.

*c. Additional Factors from Va. Code §§ 8.01-267.1 and 8.01-267.5*

Defendants point to Va. Code §§ 8.01-267.1 and 8.01-267.5 for guidance in making the decision regarding discretionary severance. Although not directly applicable to this case, the defendants argued that those factors are informative here. Those statutes reference considerations such as common questions of fact or law arising out of the same transaction or occurrence or series of transactions or occurrences; promotion of the ends of justice and the just and efficient conduct and disposition of the actions; each parities due process rights; prejudice to a fair and impartial resolution of each action; the nature of the common questions of law or facts; the convenience of the parties, witnesses, and counsel; the relative stages of the actions and the work of counsel; the efficient utilization of judicial facilities and personnel; the calendar of the courts; the likelihood and disadvantages of

duplicative and inconsistent rulings, orders, or judgments; the likelihood of prompt settlement of the actions without the entry of the order; and the likelihood of prejudice or confusion.

While most of these factors are addressed above, some remain for discussion. For example, the suggestion that each party's right to due process of law must be considered has not been specifically examined.[12] While many factors come into play in examining the due process question, one of the most important is notice. In this case, the timing of this motion to sever, as well as the ruling from the Court, provide substantial notice to the parties in order to properly prepare for the trial. In considering whether denial of a motion to sever amounts to denial of due process, courts in the criminal context (where due process concerns are heightened) have looked to other factors as well. In *Anderson v. State*, 261 Ga. App. 456, 460, 582 S.E.2d 575, 580 (2003), the Georgia Court of Appeals stated that, in considering a defendant's request for severance and applying due process protections, the factors a trial court must consider are (1) whether the number of defendants will create confusion as to the evidence and the law applicable to each, (2) whether there is a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions, or whether the strength of the evidence against one defendant will engulf the other with a "spillover" effect, and (3) whether the defendants' defenses are antagonistic to each other or to each other's rights. The Court finds these factors helpful, though they are for the most part addressed above. However, the Court notes that, even though the defenses of the two sets of defendants are antagonistic to each other, such antagonism alone is insufficient to require severance – even in the criminal context. *Kennedy v. State*, 253 Ga. 132, 134, 317 S.E.2d 822, 824 (1984). In this case, there will be ample opportunity for cross-examination by each set of defendants regarding any such antagonistic defenses. Furthermore, to the extent that the parties fear that there may be confusion creating due process issues at trial, those issues can be carefully addressed by pretrial motions as well as appropriate jury instructions. In summary, because the health-care provider defendants have not made a clear showing of prejudice that would constitute denial of due process, the Court finds that joinder under these circumstances does not violate the due process rights of the health care provider defendants.

---

[12] U.S. Const., amend. XIV, 1, provides that no state shall "deprive any person of life, liberty, or property, without due process of law. . . ." Almost identical language is contained in the Virginia Constitution, in article I, § 11. Since the language is virtually identical, the protections provided by each constitution's due process provisions are fundamentally the same. *See Archer v. Maves*, 213 Va. 633, 637, 194 S.E.2d 707, 710 (1976); *Dawson v. Loudoun County Board of Supervisors*, 59 Va. Cir. 517, 527 (2002)

While various efficiency considerations are noted above, it also seems to this Court that joinder promotes the efficient use of court resources, allowing the court to try claims against both sets of defendants at one time. Additionally, the likelihood of prompt settlement of the actions increases with the matters remaining together for trial since all of the "players" are together in one action.[13] Therefore, those factors discussed above, and not previously analyzed, militate in favor of these claims being tried together and against discretionary severance.

Accordingly, the Court finds that severance is not appropriate under the discretionary severance provisions of the statutes at issue here.

### III. Conclusion

The Motions to Sever and Motions to Drop are denied. The briefs addressing the motions decided in this Opinion and Order are ordered filed. The objections to this Opinion and Order, as stated in the pleadings and briefs, and at oral argument on the record, are preserved and exceptions are noted on such basis. The Court therefore dispenses with the Rule 1:13 counsel endorsement requirement. It is so ordered.

REPORTER'S NOTE: Earlier proceedings in this case are reported at 65 Va. Cir. 485.

---

[13] Once sufficient discovery has taken place to narrow the issues in this case, it may be appropriate for the parties to discuss with the Court utilization of the Judicial Settlement Program recently implemented by the Virginia Supreme Court and providing for such settlement conference to be conducted by a retired circuit court judge at no cost to the parties.